Good morning, Your Honors. Deborah Dyson appearing for Petitioner Anwar Hossain. I'd like to reserve two minutes for Buttle. Counsel, we will help you watch your time, but that is your total time showing on your clock. Yes, thank you, Your Honor. The threshold issue in this asylum case, and really the core of the case that the Court has before it this morning, is the question whether the Petitioner Anwar Hossain qualifies for a changed-circumstances exception to the one-year bar based on information that he received from the U.S. government that someone purporting to be a police officer in charge of the Uttara police station in Dhaka, Bangladesh, had accused him of being a terrorist. Now, the changed-circumstances exception, which was found at 208A2D of the Act, provides impertinent part that an untimely filed asylum application may be considered if the applicant demonstrates changed circumstances materially affecting his eligibility for asylum. And Ninth Circuit has clarified this exception since the IJ and the Board ruled in this case. As the government's pointed out in its 28J letter, this Court held in Singh v. Holder, 656F31047, 2013, that an untimely application may qualify for the changed-circumstances exception where the relevant circumstances do not create a new basis for a persecution claim, but instead bolster an existing claim. And that's precisely the situation that we have here. In July 2005, here in the United States, the FBI came to Mr. Hossain's home and arrested him, and they detained him and questioned him for 20 days because the U.S. government received information from someone purporting to be in charge of the Uttara police station in Dhaka, Bangladesh, saying that Mr. Hossain was involved in terrorist organizations. Given that Mr. Hossain had been detained and abused by the police in Bangladesh in 1993, as he established by credible testimony in his immigration court hearing, this information augmented his fear of future persecution if he should be returned to Bangladesh. Certainly, Mr. Hossain's subjective fear was heightened. He testified that he had cried in jail when he heard about the communications from overseas. Government seems to be saying in the 28J letter that, well, that doesn't make a difference because he doesn't qualify for asylum anyway. True, Your Honor. The government says that. I think you have to look there, though, at the question how the IJ reviewed the substantive claims. He decided that Mr. Hossain did not qualify for a changed circumstances exception, and therefore denied asylum, moved on to analyze the substantive claims under the burden for withholding of removal, which is a much higher burden. And it's less clear how the board looked at the substantive claims. The board doesn't make that clear in its decision. Basically, turning from the one-year bar to the merits of the claim, the board says, we agree with the IJ, and then it proceeds to basically uphold most of the IJ's findings. But then at the end it does say, having not established his eligibility for asylum, Mr. Hossain clearly doesn't qualify for withholding removal. However, I would argue that the record is not clear about how these claims were actually analyzed by the factfinders and that if Mr. Hossain does qualify for a changed circumstances exception, his claims should be reviewed under the burden for asylum. And he would be able to establish that he had such a fear. The other thing that the government seems to be concerned about in its 28J letter is the fact, well, what they call the fact that Mr. Hossain has not established factual basis for his changed circumstances exception. According to the government, he can't claim that his subjectively real fear is subjectively realistic because he can't, because actually because the government has been unable to locate the actual, confirm the actual source of the information against him. And this really is an anomalous situation in terms of the facts. All the facts that Mr. Hossain has come from about the information from Bangladesh that he was a terrorist, that he was accused of being a terrorist, all the facts he has actually come from the U.S. government. His attorney was informed by Department of Homeland Security attorney about the e-mail and his attorney in turn informed him. And this made for a very awkward situation at the immigration court hearing where concerns arose that the attorneys themselves were turning into witnesses. And so the way that the attorneys and the judge decided to resolve this was through a series of stipulations by the Department of Homeland Security. And what she stipulated was specifically someone claiming to be an officer in charge of the terror police station in Dhaka, Bangladesh, sent an e-mail to the Santa Rosa Police Department and city manager accusing Mr. Hossain of terrorist involvement, that the government conducted an overseas investigation but was unable to confirm the source of the e-mail, and that the FBI, after questioning Mr. Hossain and conducting a polygraph examination, no longer had any interest in him. These undisputed facts do support Mr. Hossain's objectively realistic fear. How do we deal with the fact that we just don't know who sent this e-mail? But does he have to prove the ultimate fact in order to show that he has objectively realistic fear based on these stipulated facts? Well, he has a subjective fear. But objectively realistic? But objective goes to the question as to whether this actually was the police department. True, but he has the – he knows this. He knows that someone reached out and tried to harm him from overseas. He knows that the U.S. government took this seriously enough that they detained and questioned him for 20 years. I mean, the problem from – the problem from our government's perspective is that this could be manufactured by somebody within his own family. It could be. And so it could be – it could be a fraudulent tip. It could be somebody seeking revenge. Well, that's – all of those things could be true. The thing is, is that, first of all, the U.S. government apparently is – this, I will just have to ask you to take judicial notice of the fact that one reads all the time the U.S. government is awash in snitch information. But they detained this man for 20 days, and they gave him a polygraph examination. And this suggests that they took this particular communication quite seriously, that there was something to it by their behavior. And he only has their behavior to go by. And then on top of that, they do – they did stipulate that an overseas investigation was conducted by the U.S. government. And that itself would raise his fears, because they were over there somehow raising questions. Doesn't that create a little – a slightly different problem, too? Because there's nothing – there's nothing that I can see in the – in what the snitch said that relates to his participation in a political party. In other words, claiming that he's a terrorist is a little different from saying I'm going to persecute you just because you belong to a political party and organize some demonstrations. It would be nice if it fit together a little more clearly like that. He was, however, held – according to him, again, his testimony was considered credible by the I.J. – that he was held by the police in Bangladesh in 1993 when he was trying to organize – And that, of course, goes to the question. I understand with the 93 and 98, I intend to ask the government some questions. But that goes to the question as to whether this is on account of his political participation, which is the basis for his 93 and 98 incidents. Does he – And there isn't anything to connect this to political participation. It could be on the basis of some other ground, which then would not be the prior claim, or it could be on the basis of some ground that's irrelevant to the asylum statute. The question is not really about the substantive asylum claim here, though. It's about the changed circumstances, the exception to the one-year bar, and whether or not this is on account of his political participation. So I don't know if he needs to really establish a nexus to the information that has increased his fear. But there is some suggestion of a connection, because his former persecutors,    But there is some suggestion of a connection, because his former prosecutors, So it's true that he has not the resources or the wherewithal to definitively find out who sent this e-mail.  find out who sent this e-mail. But there is a lot of objective evidence in the record that the government stipulated to that augments his objectively realistic fear of returning to Bangladesh. And I see that I've almost used up my rebuttal time. I'm going to allow you a minute, Ms. Dyson. Let's hear from the government. Thank you. Thank you. Mr. Evans. May it please the Court. I'm Manning Evans, representing the government in this matter. Two aspects of this case merit particular attention, I believe. The changed circumstances issue, as the Court's been discussing, and also whether the record compels the conclusion that Petitioner's political opinion was one central reason for the 1998 incident. Regarding changed circumstances, Petitioner's brief at page 9 really focuses on whether or not the Board of Immigration Appeals addressed an issue that the Petitioner had raised. And we believe that the Board did address that issue. In particular, the Board referred at page 3 of the record to Petitioner's email added credibility to his original claim. That's exactly how he phrased the issue in his brief to the Board. And that's at page 14 of the record. To the extent that Petitioner's brief raises any other issue regarding changed circumstances, it's only whether or not his heightened subjective fear of persecution amounted to changed circumstances. The brief before this Court says nothing about objective fear. And that's important because this Court's decisions, both in Singh as well as in Fakhry and Vohora, were all about changes in foreign countries that affected the objective reasonableness of the alien's fear. Well, don't you think his emphasis on raising his subjective fear necessarily is tied to the circumstances that caused that? In other words, the objective circumstances? Well, there may be a few. Then don't we look to see, I think, which is what Judge Bivey's questions implied, whether or not objectively, you know, those circumstances pan out? Well, Petitioner's brief is focusing on subjective fear. And the Petitioner here cited, as Dyson has referred to, the relevant statute. There's also regulation. That's Section 1208.4a)(4)(i)(B). Both of these provisions refer to a material, to a change that materially has a material effect on eligibility. And Petitioner has never explained how a change in his subjective fear has any material effect at all on his eligibility. I mean, maybe he is a little bit more afraid, but he hasn't explained how that actually makes any difference. I don't believe the case law, generally speaking, has quantified how much subjective fear you have. Generally speaking, when someone is found credible and they've testified to a change in one's subjective fear doesn't have much effect on eligibility at all. And that's especially true in this case where there's no testimony that he had no fear before the 2005 e-mail. And I point the Court to page 154 of the administrative record as indicating he had thought about asylum before the e-mail here. So this isn't a case where the person had no fear initially, and then the 2005 e-mail comes along and suddenly they're in fear. I mean, that might be a more difficult case, but here we just have a gradual increase in subjective fear. And the government contends that does not amount to a material effect on eligibility. I point out as well that as far as the government knows, there is no case that holds that a change in subjective fear would qualify for a changed circumstance justifying exception to the one-year bar. Turning to the question about whether or not the 1998 incident had as one central reason the Petitioner's political opinion, we do not believe that the evidence compels that conclusion. The record shows that only two or three of the eight to ten unidentified assailants referred to Petitioner's political affiliation during the incident. And I'd refer the Court to pages 11 and 1c. Wait a minute. Only two to three of the eight people referred to political is referred to? How many have to do this? I mean, you've got a gang attack hitting them with hockey sticks. Certainly a good question. How many people are responsible to validate this? Absolutely. But this Court has said that causation under the Real ID Act requires that the evidence show that but for the political opinion, the attack wouldn't have occurred.  But is there any other evidence in the Record Council as to what the motivation of these people might be? Mixed motives are things that we can take into account. It's not even clear that we've got a mixed motive because that suggests that you've got to have a second motive. I don't even know of the existence of a second motive. Standard of review is compelling evidence, and there is no evidence here that excludes other causes. So when you only have two or three assailants referring to the political party, who knows what the other people were saying or doing? And I would point out that this is a Petitioner who had been, as far as the public eye was concerned, inactive politically for four and a half years prior to this incident. So who knows what these people were thinking when they were approaching him? I'd also point out that these assailants were never credibly identified. And meanwhile, Petitioner at page 141 of the Record says he does have enemies in Bangladesh. He doesn't say who these people were. Counsel, let's assume, let's assume for the 1998 incident that all eight of his assailants, that two or three of them had referred to politics and the other five said, yeah, that's exactly why we're here. Okay. What happens now? Well, Your Honor, in Parasimova, you had a reference there to the Russian ethnicity of the alien, but you also had reference to the fact that she was working for an American company and ---- Okay. But we don't have any other references here. I understand that we could guess that there might be other things, but we don't have anything else in the Record. Well, Your Honor, the government bears, I'm sorry, the alien bears the burden of proof to show that she's eligible. But if everybody referred to politics, wouldn't we then have to assume that politics was at least one motivating factor? Yes, Your Honor. And if it's the only one, then we might even assume that it was central. Well, I would dispute that, Your Honor, because the question is, what was everything that was said during that proceeding? And there was no evidence here, no testimony regarding anything else that was said. It would have been very easy for Petitioner's counsel to simply ask the Petitioner, and did they say anything else? Well, let's assume that I thought that it was, that it was, that the Record compelled the fact that this was politically motivated. Okay. What does this Court do if we think that the 98 incident was politically motivated? Well, the, I believe the immigration judge also found that there was not a showing of unable or unwilling to protect. And we've cited that as an additional ground. Did the BIA find that, or did the FBI? No, Your Honor, it did not. Okay. In that case, then, we would have to remand this. I don't dispute that, Your Honor. I think that's correct. Nevertheless, I believe that the evidence does not compel the conclusion that one central reason for the incident in 1998 was the political opinion of the Petitioner. And we also believe that the exception to the one-year bar has not been demonstrated in this case. So for these reasons mainly, we would contend that the petition for review should be denied. If there are no other questions, we'd submit on that. Thank you very much. Thank you, Mr. Evans. Ms. Dyson. Well, Your Honor, with respect to Nexus for the 1998 incident, the case is recognized that Nexus is the motivation of the persecutors is very hard to establish. And the famous Supreme Court case INSVS v. Elias Zacharias, and I'm not sure I pronounced that correctly, 502 U.S. 478, 1992, says that some evidence, indirect, I mean, circumstantial or direct, must be produced by the applicant for asylum, some evidence of his persecutors' motives. And that is exactly what Mr. Hossain has produced, some evidence. And as Your Honor pointed out, there is absolutely no evidence of any other kind of motivation in the record, and all we have is the remarks that his persecutors were making, that his assailants were making as they attacked him. Furthermore, the government's contention that this is implausible, that he was attacked for political reasons because he was no longer overtly politically active since his 1993 detention by the Bangladesh police. He said that he remained politically active, but that he was doing it covertly. So that argument is pretty weak. So I think that also the Nexus for the 1993, the board and the IJ gave a pretty perfunctory Nexus analysis for the 1993 incident, saying simply that the police were motivated by Mr. Hossain's violation of the gathering laws. Both factfinders seem to take that completely at face value, not considering whether the police might have had mixed motives for that detention. Counsel, we've now taken you over your time. Okay. I have one last question. I noticed in the record that Mr. Hossain's brother has political asylum in the United States. Is that correct? Yes, that's right. Is there anything in the record that to explain what the grounds were and whether the grounds on which he was granted asylum are related to any of the claims here? I'm not sure there's anything in the record. But frankly, my memory isn't too clear on that. There might be something diggable out in the record about that. He did not appear and testify. Thank you, Your Honors. Thank you very much. We thank both counsel for the argument. Hossain v. Holder is submitted.
judges: Wood, Tashima, Bybee